Exhibit H

IN THE CIRCUIT COURT OF THE EIGHTEENTH JUDICIAL
CIRCUIT
DUPAGE COUNTY, ILLINOIS


RICK GUSZKIEWICZ,        )
Individually and on      )
behalf of all others     )
similarly situated,      )
                         )  No. 2021 L 1248
                         )
      Plaintiffs,    )
                         )
  -vs-                   )
                         )
BEELMAN TRUCK CO., a     )
Delaware corporation,    )
and SAMSARA INC., a      )
Delaware corporation,    )
                         )
      Defendants.    )



    REPORT OF PROCEEDINGS at the

videoconference hearing of the above-entitled

cause before the Honorable Neal W. Cerne, Judge

of said Court, taken before Christine Bechtold,

Certified Shorthand Reporter, commencing at

10:02, a.m., on the 2nd day of November, A.D.,

2022.

1    A P P E A R A N C E S:

2

EDELSON PC, By
3    MR. SCHUYLER UFKES (Via Zoom)
350 North LaSalle Street, 14th Floor
4    Chicago, Illinois 60654
312.589.6370
5    sufkes@edelson.com

6        On behalf of the Plaintiff;

7

JENNER & BLOCK, By
8    MR. DAVID C. LAYDEN and
MS. ELENA OLIVIERI  (Via Zoom)
9    353 North Clark Street
Chicago, Illinois 60654-3456
10    312.222.9350
dlayden@jenner.com
11    eolivieri@jenner.com

12        On behalf of the Defendant, Samsara Inc.;

13

SCOPELITIS GARVIN LIGHT HANSON & FEARY PC, By
14    MR. ANDREW J. BUTCHER (Via Zoom)
30 West Monroe Street, Suite 1600
15    Chicago, Illinois 60603
312.255.7172
16    abutcher@scopelitis.com

17        On behalf of the Defendant, Beelman Truck
Co.

18

19

20

21

22

23

24

1    THE COURT:  We have someone present.

2    Sir, you are?

3    MR. LAYDEN:  Good morning, your Honor.

4  David Layden on behalf of Defendant Samsara.

5    THE COURT:  Thank you.

6    MR. UFKES:  Good morning, your Honor.

7  Schuyler Ufkes on behalf of Plaintiff.

8    MR. BUTCHER:  Good morning, your Honor.

9  Andy Butcher on behalf of Beelman Truck.

10    MS. OLIVIERI:  This is Elena Olivieri from

11  Jenner & Block on behalf of Defendant Samsara.

12  I'm just observing.

13    THE COURT:  That's fine.

14    This comes on the motion of two of the

15  defendants, Samsara the, manufacturer, and

16  Beelman, the truck company.

17    MR. UFKES:  Your Honor, if I may before we

18  start, the plaintiff and Defendant Beelman have

19  reached a settlement in principal which we think

20  moots the motion to dismiss, and we're going to

21  work to finalize that settlement.  It would be

22  on a class basis and would end the case against

23  Beelman.

24    MR. BUTCHER:  Your Honor, if I may provide

1  some context.  We would have provided the Court

2  more advanced notice, but this just occurred

3  late last evening where we were finally able to

4  agree on terms.

5      THE COURT:  Okay.  So then -- okay.  So

6  then all we have is the manufacturer.  Okay,

7  fair enough.

8      I've read the manufacturer's motion, and I

9  guess I'll have to ask Plaintiff -- maybe I

10  don't want to talk.  My inclination was how is

11  the manufacturer supposed to be held liable in

12  the sense of how are they supposed to comply

13  with the statute if the person who's using it if

14  they have no control over, the employee?  How

15  are they supposed to do that?

16      MR. UFKES:  Sure, your Honor.  The system

17  that Samsara describes in its motion that it has

18  the employers get consent on its behalf is not a

19  bad way to do it, and they can do it that way,

20  it's just that it actually has to get the

21  consent.  Just having a contract that says, you

22  know, customer go get consent isn't enough.

23      THE COURT:  Hold on.  Hold on.  One of the

24  cases you cite says that it is.  It says it's

1  part of the contract.  One of these federal

2  trial court cases uses the word absurd without

3  really describing too much.  They use name

4  calling, as I would say.

5      Their suggestion was that one of the ways

6  that these manufacturers can get around this

7  requirement would be just to make it part of the

8  contract.  So if they made it part of the

9  contract, haven't they complied?

10      MR. UFKES:  Our position is no, your Honor,

11  because the individual whose biometrics are

12  being collected, if that consent was never

13  actually given, then that person has no way of

14  knowing whether some third party, like Samsara

15  in this case, or another manufacturer or third

16  parties beyond that has possession of their

17  biometric data or is collecting that.  So there

18  is really no consent actually gotten.

19      So what we think Samsara is arguing here

20  is, you know, that it's not actually getting

21  consent, but it's offloading that duty to the

22  customer.  In any event, that's a question for

23  discovery if Samsara actually --

24      THE COURT:  Hold on.  The case that I was

1  looking at, I believe it was cited by you, was

2  Ronquillo versus Doctor's Associates, LLC, 2022

3  WL 1066600.  Someone cited that, whoever it is.

4  That's a case where they said that some -- they

5  refer to some federal court saying that it's

6  absurd to think that the statute does not apply

7  to manufacturers.  Frankly, I'm not sure why one

8  federal court is better than another federal

9  court in deciding that.  So they're arguing

10  amongst themselves on that.

11     But even in that case, it says here that

12  they could have complied as a contractual

13  precondition of using their -- I'm

14  paraphrasing -- as a contractual precondition of

15  using their biometric timekeeping device to

16  agree to obtain its employees' written consent.

17     So if they had that in their contract that

18  you comply with the statute, according to that

19  case, they've complied.

20     MR. UFKES:  Our position, your Honor, is

21  that that's not in line with the statute, it's

22  just offloading the duty to someone else.  Even

23  in the contract that Samsara cites with its

24  customers, there's -- you know, there's a way

1  that Samsara is protected by a breach or

2  indemnity action which, you know, adjudicates

3  who actually pays.  But somebody has to be

4  liable if the persons whose fingerprint is being

5  collected isn't getting -- isn't giving consent

6  and isn't being actually notified which

7  companies or private entities are collecting

8  that data.

9      So what we seek here is -- the contractual

10  provision is a great way to offload that duty so

11  if, you know, something like Samsara doesn't

12  have a relationship where it can get consent on

13  its own or it's not easy for it to, then they

14  can offload that duty, sure, but that doesn't

15  mean consent has been actually given.

16      THE COURT:  How does Samsara go on the

17  premises of these people and approach the

18  employees?  How do they do that to get the

19  written consent?

20      I mean, I assume they can't trespass,

21  right.  So now they've got to ask for

22  permission.  How do they exactly do that?

23      How does someone who has no relationship

24  with the employee, how do they physically

1    approach this employee to have them sign a

2    written consent?

3        MR. UFKES:  We're not saying they need to

4    physically approach the person.  We --

5        THE COURT:  (Inaudible).

6        MR. UFKES:  What's that?

7        THE COURT:  They mail it to them?

8        MR. UFKES:  No.  The customer can get the

9    consent.  What Samsara needs to do is ensure

10   that it's actually getting the consent, and

11   that's also matter for discovery.  We would like

12   to get into, you know, if it actually does have

13   a successful consent program where they actually

14   are ensuring that customers are giving consent

15   for it.

16       Samsara doesn't have to get it itself, to

17   be clear, it just needs to ensure that the

18   consent is being received.

19       THE COURT:  I still don't understand how

20   that happens.  The statute says you have to

21   obtain it.  It doesn't say you have to ensure,

22   it says that you have to obtain it.

23       When I read this case, I was curious --

24   especially if they're out of state.  I don't

1   even know where Samsara is located.

2       MR. LAYDEN:  Samsara is headquartered in

3   California.

4       THE COURT:  California, okay.  So they're

5   supposed to send someone to Illinois to get

6   written consent from employees who -- I don't

7   even know what the turnover rate is.  So, I

8   mean, maybe they're turning over employees every

9   few weeks.  They've got to have somebody here

10  obtaining written consents all the time?  You

11  think that's what the act requires them to do?

12      MR. UFKES:  No, your Honor.  They can have

13  the customer, you know, show the consent that

14  they got from their employee.  Samsara doesn't

15  actually have to get the consent on its own, it

16  can deploy a customer to get the consent for

17  them.

18      What we're saying if they haven't actually

19  ensured that, and they haven't provided any

20  record of consent from our plaintiff.  So there

21  actually is no consent from the drivers that's

22  happening, and they haven't shown that.  All

23  they've shown is that there's a contract that

24  says that somebody has to get consent, but they

1 haven't shown at all that any entity, Samsara or

2 the customers, have gotten consent.

3    THE COURT:  So let's say, for example, that

4 the company, Beelman, did not get the consent

5 and Samsara did not get the consent because they

6 didn't do it.  So now we get double recovery for

7 the same incident?

8    MR. UFKES:  It's not a double recovery,

9 your Honor.

10    THE COURT:  (Inaudible).

11    MR. UFKES:  Sorry, I missed that.

12    THE COURT:  Why not?  I mean, it's just one

13 consent, but yet you're charging two people with

14 liability.

15    MR. UFKES:  It's two different collections,

16 your Honor.  It's the collection of biometric

17 data by the customer and the collection of

18 biometric data by the vendor, assuming it's as

19 we allege that the data is actually going to the

20 vendor as well.

21    So that's two different collections, and

22 under the statute each private entity that

23 collects biometric has to get a written consent.

24 It can be one consent.  It could be a consent

1   that says customer and Samsara are both

2   collecting the data; that would be compliant if

3   the customer signed that consent, and nobody

4   would be liable.

5       THE COURT:  If they don't sign the consent,

6   then they're both liable as two separate actions

7   you're saying then?

8       MR. UFKES:  Yes, that's correct.  And I

9   mentioned the Samsara contract that they

10   attached, it has indemnity close clauses exactly

11   for this type of situation.

12      THE COURT:  But it says -- on the contract

13  I think says words to the effect that you're to

14  comply with all statutes relative to our product

15  or whatever, right?

16      MR. UFKES:  And providing notices and

17  obtaining consents.

18      THE COURT:  I'm sorry, Counsel.  Do you

19  want to chime in?

20      MR. LAYDEN:  Thank you, Judge.

21      THE COURT:  In case I've missed something.

22      MR. LAYDEN:  No, your Honor, you haven't.

23  Your Honor certainly is correct that in the

24  Ronquillo case the federal court found exactly

1 what you said, which is that the technology

2 provided by Samsara can comply with any

3 obligations is has under Section 15(b) of BIPA,

4 that's the notice and consent provision of BIPA,

5 by requiring its customer to provide the notice

6 of written consent.

7     That's actually the same thing that two

8 other federal courts also note in the Figueroa

9 case and the Herd case.

10     What's particularly interesting here, your

11 Honor, is that the reason that the Courts reach

12 that decision, particularly in the Figueroa

13 case, is because the same plaintiff's counsel

14 that you have in this case argued that that

15 action would comply with BIPA.  They were trying

16 to show the court that it wouldn't be absurd to

17 apply Section 15(b) to a technology provider.

18 So they said, contrary to what they're now

19 saying, they said in that case if the technology

20 provider requires a client to comply with BIPA,

21 that is compliance by the technology provider;

22 they don't have to go on site and make sure that

23 the customer actually did it, it's sufficient to

24 do it in a contract.

1      Here, your Honor, as detailed in the

2   briefs, Samsara didn't just put it in the

3   contract.  It's certainly in there that it

4   requires the customer to consent -- to obtain

5   consent.  Samsara went two steps further.  They

6   provided the customers specifically with BIPA

7   information.  They said BIPA may apply, here is

8   a sample BIPA written disclosure, and here's a

9   sample BIPA consent that you should use with

10   your customers.  So they gave the customers the

11   tools to comply, that's the second step.

12      The third step, and this is critical, your

13   Honor, is that before the customer turned on

14   camera ID -- camera ID has to be turned on; it

15   doesn't ship enabled, it doesn't work

16   automatically.  The customer has to make an

17   affirmative step to turn it on.  There is

18   actually -- Samsara build into the technology a

19   box that pops up for the customer that says, you

20   must certify that before you turn this on you've

21   given notice and obtained all necessary

22   consents.  Beelman had to click yes to that and

23   certify to that before camera ID would operate.

24      So, in other words, your Honor, Samsara has

1    gone two steps beyond what Plaintiff's counsel

2    said was required and the three federal courts

3    have found is required under BIPA for a

4    technology provider.

5        I think to Counsel's argument that Samsara

6    should be talking to all its customers and

7    getting copies of consents, that's just an

8    impractical and, I think, frankly, absurd

9    suggestion, your Honor.  These are trucking

10   companies.  These are interstate trucking

11   companies.

12       So Beelman happens to be located in

13   Illinois, East St. Louis, but there's lots of

14   trucking companies that aren't located in

15   Illinois that still send drivers into Illinois

16   and employ Illinois residents as drivers.

17   Plaintiff's position, if you look at their class

18   definitions, every single one of those Illinois

19   residents, wherever they are, is covered by this

20   class, and it's a violation of BIPA to collect

21   their consent -- collect their data without

22   their consent.

23       So what Counsel is really saying if you

24   take his logic and apply it to what's really

1  happening here is that Beelman would be having a

2  daily if not hourly conversation with every one

3  of its -- I'm sorry, Samsara would have a daily

4  if not hourly conversation with every one of its

5  customers to say, did you hire any new drivers

6  today, has that driver signed a consent, please

7  certify for a third, a fourth, and fifth time

8  that you've done it, even though they've already

9  said they did, and then we'll turn this

10  technology on.

11      THE COURT:  That's the definition of

12  absurdity.  Instead of just throwing the word

13  out, what he's describing, isn't that -- don't

14  you reach the conclusion that to have them get

15  the written consents, wouldn't that be absurd,

16  Mr. Plaintiff?  I mean, isn't it?  I mean, come

17  on.

18      MR. UFKES:  This is certainly a matter for

19  discovery, to see what the system is like and

20  whether it could be built in a way that does

21  certify, you know, as the consents come in.

22      As I said, a vendor like Samsara is free to

23  offload the duty, and then it falls on the

24  customer to get the consent because there's an

1   indemnification clause so the customer is

2   certainly encouraged and incentivized to get the

3   consent.  But this is really a matter for

4   discovery about how the system works and if they

5   are successfully using the consent program.

6       THE COURT:  In all honesty, doesn't your

7   client have personal knowledge of that?

8       MR. UFKES:  Our client never did give

9   consent.

10       THE COURT:  Personal knowledge of the

11   system.  I mean, he drove the truck, so that

12   means he had to turn it on, right?

13       MR. UFKES:  I mean, he sat --

14       THE COURT:  What discovery is there?  I

15   mean, he used it.

16       MR. UFKES:  But we don't have a full

17   understanding of how the system works.  Our

18   customer is a truck driver who sat in the truck

19   and didn't even fully understand what was going

20   on with the camera; whether it was scanning his

21   face, where the data was going.  He sat in the

22   truck and saw a camera pointed at him.  That's,

23   to my knowledge, the extent of his knowledge.

24   So to understand how the consent program works

 1  and all of that would be outside of our

 2  plaintiff's knowledge who didn't -- who,

 3  frankly, didn't consent, and Samsara hasn't been

 4  able to provide any record of consent from our

 5  plaintiff or any other drivers.

 6      MR. LAYDEN:  Your Honor, I think if you

 7  look at the plaintiff -- plaintiff's counsel's

 8  somewhat understating the extent of their

 9  factual knowledge of the circumstances here.

10  They did extensive research on the technology

11  and the way it's used, and the plaintiff is

12  quite detailed at what they believe to be the

13  case.

14      I think there's no -- they have not

15  attempted to rebut how we're describing how this

16  consent screening works.  I understand why

17  counsel is arguing for discovery, I get that

18  tactically, but there isn't an issue here that

19  would be developed through discovery.

20      The question is a very, very

21  straightforward application of what Plaintiff's

22  counsel said was okay in other -- I accept that

23  he was being credible and honest to those courts

24  when he made the argument to win those other

1    three cases.  I think he was.  The most

2    important thing, your Honor, is the three

3    federal courts agree, and they said this is

4    enough, right.  And I think that is -- and we've

5    done, as I said, not just what Plaintiff's

6    counsel in those three federal courts said was

7    enough, we've gone two steps beyond.

8        THE COURT:  I'm going to grant the motion

9    of Samsara to dismiss.  I find that they have

10   complied with the statute.  As they cited in its

11   case -- and I'm not sure how -- I'm not sure how

12   binding the federal court trial court cases are.

13   They give some different perspective on how to

14   look at something.  I look at it that way.

15   They're, kind of, all over the board; I mean,

16   some go one way, some go the other way.  But

17   when you look at the statute and it says to

18   obtain written consent, I don't know how a third

19   party vendor is supposed to comply with that.

20   It seems impractical, as described by Counsel,

21   for Samsara, because there's no way that they

22   can monitor all the employees all the time.

23   They have no control over the employees.

24   They're not on the premises.  They're not

1  part -- I mean, it's almost like saying you've

2  got to be part of the hiring process because

3  then it would be just a condition of employment

4  that you sign the consent, and they're not even

5  a part of that, and there's no way they could

6  be.  They have no standing.  They have no right

7  to be there.  They would be trespassing.

8      So when the one federal court disagreed and

9  said it was just absurd for that kind of

10  interpretation, I found that kind of

11  disconcerting because they gave no facts to

12  support it up, they just name called and said it

13  was absurd.  And it wasn't until the Doctor's

14  case where they said, well, if it was part of

15  the contract, that seems to have complied.  And

16  I agree.  I don't know how else they can comply.

17  You're putting them into an impossible

18  situation, and I don't think that's the intent

19  of the statute, to put people in the trick bag

20  as to how they're supposed to behave.

21      So if it's in the contract and they say

22  you're supposed to comply, I think that

23  satisfies their obligation under the statute.

24  So the motion to dismiss will be granted.

1       Counsel, if you want to prepare that order

2   on behalf of Samsara.

3       MR. LAYDEN:  I will.  Is that dismissal

4   with prejudice?

5       THE COURT:  Yes, it is.  I'll give you a

6   status date with regards to the remaining

7   defendant to -- how long do you need?

8       MR. UFKES:  If we could get -- I would say

9   45 days just to be safe.  And, hopefully, we'll

10   have a motion for ruling and approval at that

11   point.

12       THE COURT:  So how about 12-14 at

13   9:00 a.m.?

14       MR. BUTCHER:  That works for Beelman Truck.

15       MR. UFKES:  I have a 9:30.

16       THE COURT:  That's okay.  12:15?

17       MR. UFKES:  That works for Plaintiff.

18   Thank you, your Honor.

19       MR. BUTCHER:  That works forks Beelman.

20       MR. LAYDEN:  I'll put that in the order.

21               (Which were all the

22               proceedings had on this

23               date.)

24

1    STATE OF ILLINOIS  )
                              )  SS:
2    COUNTY OF C O O K  )

3

4              Christine Bechtold, being first duly

5    sworn on oath says that she is a court reporter

6    doing business in the City of Chicago; that she

7    reported in shorthand the proceedings given at

8    the taking of said hearing and that the

9    foregoing is a true and correct transcript of

10    her shorthand notes so taken as aforesaid and

11    contains all the proceedings given at said

12    hearing.

13              Witness my official signature on this

14    6th day of November A.D., 2022.

15

16

17

          Christine Bechtold, CSR
18            License No.:  084-003575

19

20

21

22

23

24

**1**

1066600
6:3
15(b)
12:3,17

**2**

2022
6:2

**A**

able
4:3
absurd
5:2 6:6
12:16 14:8
15:15
absurdity
15:12
act
9:11
action
7:2 12:15
actions
11:6
adjudicates
7:2
advanced
4:2
affirmative
13:17
agree
4:4 6:16
allege
10:19
Andy
3:9
apply
6:6 12:17
13:7 14:24
approach
7:17 8:1,4

argued
12:14
arguing
5:19 6:9
argument
14:5
around
5:6
Associates
6:2
assume
7:20
assuming
10:18
attached
11:10
automatically
13:16

**B**

bad
4:19
basis
3:22
Beelman
3:9,16,18,23
10:4 13:22
14:12 15:1
behalf
3:4,7,9,11
4:18
believe
6:1
better
6:8
biometric
5:17 6:15
10:16,18,23
biometrics
5:11
BIPA
12:3,4,15,20
13:6,7,8,9
14:3,20
Block

3:11
box
13:19
breach
7:1
briefs
13:2
build
13:18
built
15:20
Butcher
3:8,9,24

**C**

California
9:3,4
calling
5:4
camera
13:14,23
case
3:22 5:15,24
6:4,11,19
8:23 11:21,
24 12:9,13,
14,19
cases
4:24 5:2
certainly
11:23 13:3
15:18
certify
13:20,23
15:7,21
charging
10:13
chime
11:19
cite
4:24
cited
6:1,3
cites
6:23

class
3:22 14:17,
20
clauses
11:10
clear
8:17
click
13:22
client
12:20
close
11:10
collect
14:20,21
collected
5:12 7:5
collecting
5:17 7:7
11:2
collection
10:16,17
collections
10:15,21
collects
10:23
come
15:16,21
comes
3:14
companies
7:7 14:10,
11,14
company
3:16 10:4
compliance
12:21
compliant
11:2
complied
5:9 6:12,19
comply
4:12 6:18
11:14 12:2,
15,20 13:11
conclusion
15:14

consent
  4:18,21,22
  5:12,18,21
  6:16 7:5,12,
  15,19 8:2,9,
  10,13,14,18
  9:6,13,15,
  16,20,21,24
  10:2,4,5,13,
  23,24 11:3,5
  12:4,6 13:4,
  5,9 14:21,22
  15:6,24
consents
  9:10 11:17
  13:22 14:7
  15:15,21
context
  4:1
contract
  4:21 5:1,8,9
  6:17,23 9:23
  11:9,12
  12:24 13:3
contractual
  6:12,14 7:9
contrary
  12:18
control
  4:14
conversation
  15:2,4
copies
  14:7
correct
  11:8,23
counsel
  11:18 12:13
  14:1,23
Counsel's
  14:5
court
  3:1,5,13
  4:1,5,23
  5:2,24 6:5,
  8,9 7:16
  8:5,7,19 9:4

10:3,10,12
  11:5,12,18,
  21,24 12:16
  15:11
courts
  12:8,11 14:2
covered
  14:19
critical
  13:12
curious
  8:23
customer
  4:22 5:22
  8:8 9:13,16
  10:17 11:1,3
  12:5,23
  13:4,13,16,
  19 15:24
customers
  6:24 8:14
  10:2 13:6,10
  14:6 15:5

D

daily
  15:2,3
data
  5:17 7:8
  10:17,18,19
  11:2 14:21
David
  3:4
deciding
  6:9
decision
  12:12
Defendant
  3:4,11,18
defendants
  3:15
definition
  15:11
definitions
  14:18

deploy
  9:16
describes
  4:17
describing
  5:3 15:13
detailed
  13:1
device
  6:15
different
  10:15,21
disclosure
  13:8
discovery
  5:23 8:11
  15:19
dismiss
  3:20
Doctor's
  6:2
double
  10:6,8
driver
  15:6
drivers
  9:21 14:15,
  16 15:5
duty
  5:21 6:22
  7:10,14
  15:23

E

East
  14:13
easy
  7:13
effect
  11:13
Elena
  3:10
employ
  14:16

employee
  4:14 7:24
  8:1 9:14
employees
  7:18 9:6,8
employees'
  6:16
employers
  4:18
enabled
  13:15
end
  3:22
ensure
  8:9,17,21
ensured
  9:19
ensuring
  8:14
entities
  7:7
entity
  10:1,22
evening
  4:3
event
  5:22
exactly
  7:22 11:10,
  24

F

fair
  4:7
falls
  15:23
federal
  5:1 6:5,8
  11:24 12:8
  14:2
fifth
  15:7
Figueroa
  12:8,12

**finalize**
3:21

**finally**
4:3

**fine**
3:13

**fingerprint**
7:4

**found**
11:24 14:3

**fourth**
15:7

**frankly**
6:7 14:8

**free**
15:22

---

**G**

---

**gave**
13:10

**getting**
5:20 7:5
8:10 14:7

**given**
5:13 7:15
13:21

**giving**
7:5 8:14

**going**
3:20 10:19

**Good**
3:3,6,8

**great**
7:10

**guess**
4:9

---

**H**

---

**happening**
9:22 15:1

**headquartered**
9:2

**held**
4:11

**Herd**
12:9

**hire**
15:5

**Hold**
4:23 5:24

**Honor**
3:3,6,8,17,
24 4:16 5:10
6:20 9:12
10:9,16
11:22,23
12:11 13:1,
13,24 14:9

**hourly**
15:2,4

---

**I**

---

**ID**
13:14,23

**Illinois**
9:5 14:13,
15,16,18

**impractical**
14:8

**Inaudible**
8:5 10:10

**incident**
10:7

**inclination**
4:10

**indemnity**
7:2 11:10

**individual**
5:11

**information**
13:7

**interesting**
12:10

**interstate**
14:10

---

**J**

---

**Jenner**

3:11

**Judge**
11:20

---

**K**

---

**know**
4:22 5:20
6:24 7:2,11
8:12 9:1,7,
13 15:21

**knowing**
5:14

---

**L**

---

**late**
4:3

**Layden**
3:3,4 9:2
11:20,22

**liability**
10:14

**liable**
4:11 7:4
11:4,6

**line**
6:21

**LLC**
6:2

**located**
9:1 14:12,14

**logic**
14:24

**look**
14:17

**looking**
6:1

**lots**
14:13

**Louis**
14:13

---

**M**

---

**made**
5:8

**mail**
8:7

**make**
5:7 12:22
13:16

**manufacturer**
3:15 4:6,11
5:15

**manufacturer's**
4:8

**manufacturers**
5:6 6:7

**matter**
8:11 15:18

**mean**
7:15,20 9:8
10:12 15:16

**mentioned**
11:9

**missed**
10:11 11:21

**moots**
3:20

**morning**
3:3,6,8

**motion**
3:14,20 4:8,
17

---

**N**

---

**name**
5:3

**necessary**
13:21

**need**
8:3

**needs**
8:9,17

never
  5:12
note
  12:8
notice
  4:2 12:4,5
  13:21
notices
  11:16
notified
  7:6

_____

**O**
_____

obligations
  12:3
observing
  3:12
obtain
  6:16 8:21,22
  13:4
obtained
  13:21
obtaining
  9:10 11:17
occurred
  4:2
offload
  7:10,14
  15:23
offloading
  5:21 6:22
okay
  4:5,6 9:4
Olivieri
  3:10
one
  4:23 5:1,5
  6:7 10:12,24
  14:18 15:2,4
operate
  13:23

_____

**P**
_____

paraphrasing

6:14
part
  5:1,7,8
parties
  5:16
party
  5:14
pays
  7:3
people
  7:17 10:13
permission
  7:22
person
  4:13 5:13
  8:4
persons
  7:4
physically
  7:24 8:4
plaintiff
  3:7,18 4:9
  9:20 15:16
plaintiff's
  12:13 14:1,
  17
please
  15:6
pops
  13:19
position
  5:10 6:20
  14:17
possession
  5:16
precondition
  6:13,14
premises
  7:17
present
  3:1
principal
  3:19
private
  7:7 10:22
product

11:14
program
  8:13
protected
  7:1
provide
  3:24 12:5
provided
  4:1 9:19
  12:2 13:6
provider
  12:17,20,21
  14:4
providing
  11:16
provision
  7:10 12:4
put
  13:2

_____

**Q**
_____

question
  5:22

_____

**R**
_____

rate
  9:7
reach
  12:11 15:14
reached
  3:19
read
  4:8 8:23
reason
  12:11
received
  8:18
record
  9:20
recovery
  10:6,8
refer
  6:5

relationship
  7:12,23
relative
  11:14
required
  14:2,3
requirement
  5:7
requires
  9:11 12:20
  13:4
requiring
  12:5
residents
  14:16,19
right
  7:21 11:15
Ronquillo
  6:2 11:24

_____

**S**
_____

sample
  13:8,9
Samsara
  3:4,11,15
  4:17 5:14,
  19,23 6:23
  7:1,11,16
  8:9,16 9:1,
  2,14 10:1,5
  11:1,9 12:2
  13:2,5,18,24
  14:5 15:3,22
saying
  6:5 8:3 9:18
  11:7 12:19
  14:23
says
  4:21,24 6:11
  8:20,22 9:24
  11:1,12,13
  13:19
Schuyler
  3:7
second
  13:11

Section
  12:3,17
see
  15:19
seek
  7:9
send
  9:5 14:15
sense
  4:12
separate
  11:6
settlement
  3:19,21
ship
  13:15
show
  9:13 12:16
shown
  9:22,23 10:1
sign
  8:1 11:5
signed
  11:3 15:6
single
  14:18
Sir
  3:2
site
  12:22
situation
  11:11
specifically
  13:6
St
  14:13
start
  3:18
state
  8:24
statute
  4:13 6:6,18,
  21 8:20
  10:22
statutes
  11:14

step
  13:11,12,17
steps
  13:5 14:1
successful
  8:13
sufficient
  12:23
suggestion
  5:5 14:9
supposed
  4:11,12,15
  9:5
sure
  4:16 6:7
  7:14 12:22
system
  4:16 15:19

_____

**T**

take
  14:24
talk
  4:10
talking
  14:6
technology
  12:1,17,19,
  21 13:18
  14:4 15:10
terms
  4:4
Thank
  3:5 11:20
thing
  12:7
think
  3:19 5:19
  6:6 9:11
  11:13 14:5,8
third
  5:14,15
  13:12 15:7
three
  14:2

throwing
  15:12
time
  9:10 15:7
timekeeping
  6:15
today
  15:6
tools
  13:11
trespass
  7:20
trial
  5:2
truck
  3:9,16
trucking
  14:9,10,14
trying
  12:15
turn
  13:17,20
  15:9
turned
  13:13,14
turning
  9:8
turnover
  9:7
two
  3:14 10:13,
  15,21 11:6
  12:7 13:5
  14:1
type
  11:11

_____

**U**

Ufkes
  3:6,7,17
  4:16 5:10
  6:20 8:3,6,8
  9:12 10:8,
  11,15 11:8,
  16 15:18

understand
  8:19

_____

**V**

vendor
  10:18,20
  15:22
versus
  6:2
violation
  14:20

_____

**W**

want
  4:10 11:19
way
  4:19 5:13
  6:24 7:10
  15:20
ways
  5:5
weeks
  9:9
went
  13:5
WL
  6:3
word
  5:2 15:12
words
  11:13 13:24
work
  3:21 13:15
written
  6:16 7:19
  8:2 9:6,10
  10:23 12:6
  13:8 15:15